**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO, et al., Respondents.**

No. 6090.

United States Court of Appeals First Circuit.
July 10, 1963.

sel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Arthur M. Goldberg, Washington, D. C., were on brief, for petitioner.

Harold B. Roitman, Boston, Mass., for respondents.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition of the National Labor Relations Board pursuant to Section 10 (e) of the National Labor Relations Act, as amended, (61 Stat. 136, 73 Stat. 519. 29 U.S.C. § 151 et seq.), for enforcement of its order issued against respondents on June 22, 1962. The Board found that respondents violated Section 8(b) (1) (A) and (2) of the Act by requesting John I. Paulding, Inc., a manufacturer of electrical fixtures and related products, located in New Bedford, Massachusetts, (hereinafter called the Company) to discharge ten employees because they had failed to pay dues to the Union.

The facts giving rise to the alleged violations are as follows. On July 2, 1958, the Company and the Union entered into a collective bargaining agreement which provided, *inter alia*, for a limited form of union security. Under the agreement, non-members of the Union employed by the Company were not required to join the Union. However, Union members and employees who thereafter joined the Union were obligated to maintain their membership for the duration of the existing contract; new employees were required to join the Union after thirty days' employment.[1]

This initial collective bargaining agreement expired June 30, 1959 and, following a strike of some six months duration, a new one year contract was executed on January 11, 1960. This contract was to continue from year to year unless either party gave sixty days written notice to terminate. Proper notice was given and

Melvin J. Welles, Washington, D. C., with whom Stuart Rothman, Gen. Coun-

---

1. This type of union-security provision is commonly referred to as a "Maintenance of Membership" provision.

the contract expired on January 11, 1961. A new agreement was reached on January 23, 1961.

Both the 1960 and the 1961 contracts, consonant with the initial agreement signed in 1958, contained clauses which provided that those employees of the Company who were not members of the Union at the time the contract was executed would not be required to join the Union. However, all employees who had joined the Union before the execution of the contract and employees hired subsequent to the execution of the contract would be required to be members of the Union as a condition of continued employment.

On various dates from December 23, 1960 to January 19, 1961, ten employees of the Company signed cards in which they sought to resign from membership in the Union and revoke their checkoff authorizations. These ten employees were members in good standing of respondents and their dues were paid through January 1961. Four of the resignations were served upon the president of respondent Local on January 17, 1961, and the remaining six were tendered on January 19, 1961.

As noted previously, on January 23, 1961, respondents and the Company negotiated a new collective bargaining agreement and the strike ended. On February 28, 1961, respondents sent letters to each of the ten employees—who had tendered resignations during the hiatus between the contracts—informing them that they were a month in arrears in dues and, in addition, owed a reinstatement fee of $15.00.[2] On the same day respondents sent a letter to the Company listing the ten employees who it claimed were delinquent in payment of dues. All of the letters warned that should the employees fail to pay the back dues, respondents would proceed to demand the employees' discharge under the

provisions of the Union security agreement.

On March 10, 1961, respondents filed a grievance with the Company claiming it had violated the contract in that it had failed to require the ten employees to pay their dues or, alternatively, to have discharged them for default in payment. The Company took no action on the Union's request indicating that it would defer action until the National Labor Relations Board had acted on the matter.

The stipulation entered into by the parties indicates that the ten employees who sought to resign—in the interim between the contracts—failed to follow the procedures provided in their membership and checkoff agreements and in the Constitution and By-laws of respondents insofar as they pertain to resignation or cancellation of the checkoff and membership agreements. Under the Union's Constitution a resignation is effective, *inter alia*, only if it is sent by registered mail to the financial secretary of the local union to which the member belonged "within the ten (10) day period prior to the end of the fiscal year of the Local Union."

In the instant case, the end of the fiscal year of the respondent Local corresponded with the end of the calendar year. Each of the attempted "resignations" at issue here, having been tendered after the close of the stipulated time period, failed to comport with the above-cited constitutional provision and, under the Union's theory, were invalid. Thus, again, under the Union's theory, as the purported resignations were invalid they were correspondingly ineffective to sever the members' relations with the Union and these members, accordingly, remained members, subject to dues, at all pertinent times. In sum, according to the Union, the ten were still "union members" at the time that the pertinent contract was signed and thus

---

2. So far as appears the reinstatement fee was an automatic penalty for failure to pay the February dues, and not an acknowledgment that there had been a resignation.

subject to the maintenance of membership provisions.

The Board found that the ten employees did not fall within the purview of the maintenance of membership agreement as they had in fact resigned from the Union prior to the execution of the agreement and, accordingly, were not "present employees of the Company who on the date of this Agreement are members of the Union." Consequently, under the Board's view, as the Union was attempting to cause the Company to discharge employees for nonpayment of dues which were not required of them by the contract, the respondents violated Sections 8(b) (1) (A) and (2) of the Act. Further, according to the Board, as the respondents had no right to demand dues of the ten employees under the maintenance of membership clause, the letters of February 28 demanding payment of dues restrained and coerced employees in the exercise of their right, under Section 7 of the Act, to refrain from union activities. Accordingly, the Board found that this conduct was in violation of Section 8(b) (1) (A) of the Act.

The basis of the Board's conclusion that the ten subject employees had effectively resigned from the Union—notwithstanding their conceded failure to comport with the Union's Constitution and By-laws—is found in Section 7. Section 7, after providing that "Employees shall have the right to self-organization, to form, join, or assist labor organizations," further states that employees "also have *the right to refrain* from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment * * *." 29 U.S.C. § 157. (Emphasis supplied.)

It is the Board's broad position that since Section 7 of the Act allows an employee freedom to "refrain" from union membership when there is no collective bargaining agreement in force to the contrary, then nothing in the Union's Constitution or By-laws may circumscribe this right.

We believe that in adopting this view and in finding the instant violations, the Board has failed to accord due deference to Section 8(b) (1) of the Act. This Section, after stating that it shall be an unfair labor practice for a labor organization to restrain or coerce employees in the exercise of rights guaranteed by Section 7 of the Act—to participate in or to refrain from union activity—goes on to expressly provide: "That this paragraph shall not impair the right of a labor organization *to prescribe its own rules with respect to the acquisition or retention of membership therein; * * *.*" 29 U.S.C. § 158(b) (1). (Emphasis supplied.)

We believe that this language is clear and express and should assuredly be given effect unless it would do violence to the underlying purpose of the Act. Contrary to the Board's view, we do not perceive a conflict between the provisions of Section 7 and those of Section 8(b) (1), but rather believe the two can be harmonized.

■ Under Section 7, absent a collective bargaining agreement to the contrary, the employee has indeed the unfettered right to abstain from indulging in union activity. He need not "form," "join" or "assist" a labor organization and, again, an agreement apart, this inactivity cannot be the source of recriminations. It is by now too clear for citation that this facet of Section 7 was designed to prevent forcing the unwilling worker into a union.

■■ However, we believe that it is quite another thing when the employee eschews his "reluctance" and voluntarily joins a labor organization. At this point, under our view, the employee takes off the protective mantle of Section 7's "refraining" provision and renders himself amenable to the reasonable internal regulations of the organization with which he chooses to cast his lot. Needless to say, as we indicated in a prior opinion between these same parties: "it may be

that \* \* \* there is a limit of reasonableness beyond which a union may not go" in structuring its internal regulations. N. L. R. B. v. International Union, United Auto, Aircraft, Agr. Imp. Wkrs., 297 F.2d 272, 276 (1st Cir. 1961). Be that as it may, we find nothing in this record to indicate that the instant Union has transgressed these limits. It is the Union's position that the requirement that resignations be filed with the Financial Secretary of the Local within the ten day period prior to the end of the year was aimed at insuring "uniform practices to preserve its financial standing by establishing reasonable times for resignations by those who were in good standing." As such, this was assuredly a rational basis for the requirement.

Moreover, there is no contention here that any of the subject employees were unaware of this provision.[3] In short, we believe that the Union's Constitution and By-laws—here relevant—were valid and viable provisions with which the employees had to comply if they desired to effectively sever their relationship with the Union. It is true that under Section 7 of the Act, and in the light of the limited security agreement which obtained between the Company and the Union in the instant case, the subject employees need not have joined the Union. However, once they voluntarily took that step, they embraced not only the benefits but also the burdens which flowed from their union membership. One of those "burdens" was the duty of comporting with the Union's reasonable internal regulations; a requirement they failed to discharge here.

▮ In sum, we disagree with the Board that as between the members and the Union, the members were always free to resign contrary to the Constitution and By-laws of the Union. Therefore, the logical import of this is that *vis-a-vis* the Union, the ten employees were still members of the Union when the new

contract was signed on January 23, 1961. Therefore, they were within the purview of and subject to the maintenance of membership provisions of the contract during the remainder of its term.

Thus, as the ten employees were presently members of the Union, the Union had the right, under the terms of the agreement, to collect their dues and, failing this, to take the further action which was undertaken in this case and which serves as the basis for the Board's findings of violations of the Act. Accordingly, we believe that there is no support in this record for the Board's findings and, consequently, the Board's order will not be enforced.

A decree will be entered setting aside the order of the Board.

---

3. There is little basis for such a contention because each employee was given a copy of the Union's Constitution and By-laws at the time that he joined the Union.