NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

MECHANICAL AND ALLIED PRODUCTION WORKERS UNION, LOCAL 444, AFL–CIO, Its New England Joint Board, AFL–CIO, and R.W.D.S.U., AFL–CIO, Respondent.

No. 7489.

United States Court of Appeals, First Circuit.

June 11, 1970.

Warren M. Davison, Washington, D. C., Attorney, with whom Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, and Marcel Mallet-Prevost, Assistant General Counsel, were on brief, for petitioner.

Harold B. Roitman, Boston, Mass., with whom Irving Rich, Boston, Mass., was on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is a petition for enforcement of a Labor Board order issued against the respondent union. The Board found that the union had violated section 8(b) (2) and (b) (1) (A) of the Act by causing the Pneumatic Scale Corporation to discharge one Saccoach because he failed to pay union dues.

The union and the company had entered into a collective bargaining agreement that was due to expire on June 8, 1967. A new contract had been proposed and on June 7 certain of its terms were put before the union membership for ratification. Saccoach, an employee and former member of the union's executive board, actively opposed confirmation. On June 7 the membership rejected the proposed terms. This defeat proved to be of short duration, however, for the proposed provisions won approval in a second vote taken the following day.[1] On June 9 Saccoach, bitterly disappointed by the vote, sought out the president of the union and told him that he was quitting the union. To prove it, he crumpled up his union card and threw it in the waste basket.

On August 14, 1967, the company and the union executed a new collective bargaining agreement, retroactive to June 9. This contract, like its predecessor, contained a maintenance of membership clause[2] and a checkoff provision. By its terms all employees who were members in good standing of the union on August 29, 1967, had to continue in good standing as a condition of employment. Simply stated, this meant that they had to pay their union dues.

Saccoach had been on layoff status since May. Upon returning to work in September he discovered that union dues were still being deducted from his pay check. When he directed the company to discontinue the dues checkoff, the union invoked the provision of the maintenance clause and requested the company to discharge him. The company complied.

The Board found that Saccoach effectively resigned from membership in the union before the August 29 deadline and that he was therefore under no obligation to pay union dues.

We do not understand the union to argue that Saccoach was properly discharged because the security provision of the new contract operates retroactively to June 9. Indeed, it could not do so since the result would be to adversely affect third persons. NLRB v. Consolidated Constructors and Builders, Inc. and Local 521, United Bhd. of Carpenters, 406 F.2d 1081, 1083 n. 6 (1st Cir. 1969); Lodge No. 35, International Association of Machinists v. NLRB, 71 App.D.C. 175, 110 F.2d 29, 43–44 (1939), aff'd, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50 (1940). Instead, it relies on the memorandum voted by the membership on June 8 to bridge the gap between the old and new collective bargaining agreements. Cf. National Lead Co. (Titanium Division), 106 NLRB 545, 548 (1953). But the memorandum approved on June 8 contained no union security provision and did not manifest an intent to carry over the old provision.[3] Since no bridge

---

1. The memorandum on which the membership voted dealt with eight numbered items, all benefits, including wage increases, holidays, group life insurance, pension plan, vacations and overtime. It makes no mention of union security.

2. "ARTICLE III
Union Shop - Check-Off
(a) All employees who on the 29th day of August, 1967 are members of the Union in good standing or any employees hereafter who become members of the Union shall as a condition of their employment maintain their membership in good standing in the Union. For the purposes of this paragraph, an employee shall be considered to be a 'member of the Union in good standing' provided he is not delinquent in the payment of his Union dues and initiation fee. * * * "

3. See note 1, supra. The union argues that by custom old clauses not contested were carried over into new contracts. Where, as here, the collective bargaining agreement included a specific time and

was formed, Saccoach was free to quit the union when he did.

The union takes the position that Saccoach's resignation was ineffective because it did not occur during the "escape period" provided for in the new contract [4] and because it was not in writing as required by the union's constitution. The first argument falls for the simple reason that at the time of his resignation there was no contractual obligation imposing limitations on resignations.[5] *See* NLRB v. International Union and Local 899 UAW, 297 F.2d 272, 274 (1st Cir. 1961); Communications Workers of America v. NLRB, 215 F.2d 835, 838–839 (2d Cir. 1954); NLRB v. International Union and Local 291 UAW, 194 F.2d 698, 700–701 (7th Cir. 1952); Colonie Fibre Co., Inc. v. NLRB, 163 F.2d 65, 67–68 (2d Cir. 1947); May Department Stores, Inc. (Kaufman Division), 133 N.L.R.B. No. 100, 1961 CCH NLRB 10496. The second argument fares no better, because it is perfectly clear that the constitutional provision referred to [6] pertains only to withdrawals from "the trade." There is no constitutional provision governing resignations from the union. *Compare* NLRB v. International Union UAW, 320 F.2d 12 (1st Cir. 1963).

We have considered the union's other contentions and find them lacking in merit.

The Board's order will be enforced.

---

date of expiration, it was incumbent on the union to submit more positive evidence of such a carry-over understanding than the record discloses. The Trial Examiner was justified in finding that the union security provision did not come into effect until the date of the new collective bargaining agreement. We note also that both agreements called for discussion of terms of the succeeding agreement within 60 days of expiration in order to avoid hiatus.

4. The parties seem to be in agreement that for the period during which the contract was effective employees who did not wish to belong to the union had to opt out between August 14, 1967, the date the new collective bargaining agreement was executed, and August 29, 1967.

5. Had there been such a provision, the union might well be required to show that it was injured by the prematurity of the resignation. Where the resignation was unmistakably adequate apart from this, it seems perilously close to impermissible technicality to say that a premature resignation does not become effective when the proper time comes.

6. Art. IX, Sec. 2 states: "Any member desiring to leave the trade may withdraw from membership on giving written notice of such withdrawal and paying all dues * * * and surrendering his membership book or card."