481 P.2d 280

Application of Arthur STONE, on behalf of Steven R. Stone and Shirley Marie Stone, Minors.

Deanna Florence WILDS, nee Stone, Appellant and Cross-Appellee,

v.

Arthur STONE, Appellee and Cross-Appellant.

No. 1 CA–HC 22.

Court of Appeals of Arizona, Division 1, Department B.

March 3, 1971.

Rehearing Denied April 1, 1971.

Review Denied May 11, 1971.

George M. Ireland, Prescott, for appellant and cross-appellee.

Boyle & Brown by Raymond W. Brown, Prescott, for appellee and cross-appellant.

HAIRE, Judge.

This is an appeal and cross-appeal from an order of the Superior Court entered in a habeas corpus proceeding affecting the temporary custody and support of two minor children. The facts are essentially undisputed and as pertinent to a disposition of this appeal are as follows:

Arthur Stone, petitioner below and appellant herein ("Stone") had two children by his then wife, Deanna Stone (now Deanna Wilds by remarriage and hereinafter "Wilds" or "respondent"). Stone at the time of his marital dispute with respondent had been, and presently is, on active duty with the United States "Seabees".

On May 26, 1967, Stone filed a complaint for divorce in California, where he was permanently stationed. Service was made on respondent in California, where she was separately residing. Respondent filed an answer and counterclaim in the divorce action. Upon Stone's return to the United States from his subsequent reassignment to Vietnam, a hearing was set in the divorce action for the purpose of determining whether an interlocutory judgment of divorce should be granted. Respondent was advised of this hearing but failed to appear. The hearing was held, and an interlocutory judgment of divorce was entered on December 29, 1967. By that judgment, Stone was granted an interlocutory divorce from the respondent, and was awarded legal custody of the minor children, subject to reasonable rights of visitation vested in respondent. Moreover, the trial court specifically reserved to respondent the right to move for a change of custody prior to July 1, 1968, without requiring respondent to show a change of circumstances as a condition to such a change of custody.

Stone thereafter travelled to Oregon, where respondent was then residing with the minor children, and obtained custody of the children in accordance with the California judgment. The children remained in Stone's physical custody for approximately two months until his assignment to Iceland, when the children were placed by Stone in the physical custody of friends, Mr. and Mrs. Marvin Stewart. On June 3, 1968, a final judgment of divorce was entered in favor of Stone, which reaffirmed the provisions of the interlocutory judgment regarding custody of the minor children. Respondent Wilds then moved for a change of custody in California pursuant to the California interlocutory judgment, and a change of custody hearing was held sometime in June 1968. Stone returned from Iceland to testify at that hearing, and respondent was represented by counsel. After a hearing on the merits, the court entered an order awarding custody of the minor children to Stone for a period of nine months each year and to respondent for the remaining three months. On August 29, 1968, three days after such order was entered and contrary to its terms giving Stone custody for the next nine months, respondent took the children and left the state of California. Upon Stone's return to the United States in February 1970, he set about to locate respondent and their children, whom he discovered residing in Black Canyon City, Arizona. He thereupon initiated this habeas corpus proceeding to recover physical custody of the children. Respondent

Wilds cross-petitioned for custody in herself based on a change of circumstances.

The trial judge entered an order granting custody of the minor children to the father, giving as his sole reason that under governing law the court believed itself to be without jurisdiction to award custody to the mother. However, in the same order the court contradictorily awarded: (1) physical custody of the children to the mother until the court could determine whether the father, Stone, had become settled within the state of Mississippi, Stone's next duty station; (2) child support to be paid by Stone during this interim period, either in the amount of the allotment provided by the United States Navy for the support and maintenance of the minor children of the parties, or in lieu thereof, the sum of $75.00 per month; and (3) the sum of $400.00 to be paid by Stone as attorney's fees for respondent's attorney. From this order, both Stone and respondent Wilds have appealed.

■ Under proper circumstances either the petitioner or the respondent may utilize habeas corpus proceedings as a procedural device to obtain a modification of the child custody provisions of a prior divorce decree. In re O'Neil, 9 Ariz.App. 437, 453 P.2d 533 (1969); In re Clay, 96 Ariz. 160, 393 P.2d 257 (1964); Charboneau v. Superior Court of Maricopa County, 101 Ariz. 586, 422 P.2d 702 (1967). However, the courts of this state will not exercise such jurisdiction if doing so would be tantamount to putting this state's stamp of approval on a wrongful abduction from a sister state. Brown v. Brown, 105 Ariz. 273, 463 P.2d 71 (1969); Johnson v. Johnson, 105 Ariz. 233, 462 P.2d 782 (1970). If the California decree awarding custody to Stone was a valid decree, the facts show that respondent wrongfully obtained custody of the children and removed them from that state without even advising the petitioner (who had the legal right to custody) of where she and the children were to reside. Respondent, however, contends that the California custody decree was in-

valid because of lack of jurisdiction. Since the respondent has sought to collaterally impeach the validity of the California judgment underlying the custody award in issue here, this Court must turn its attention to the question of whether California had the requisite jurisdiction.

■ It is a settled principle that the absence of jurisdiction to render a particular judgment constitutes sufficient cause for a collateral attack upon the judgment in any suit in which its validity is drawn into question. See, e. g., Stephens v. Thomasson, 63 Ariz. 187, 160 P.2d 338 (1945); Coffee v. National Equipment Rental, Limited, 9 Ariz.App. 249, 451 P.2d 329 (1969); and 46 Am.Jur.2d Judgments § 657 (1969). At all times, however, California had in personam jurisdiction of the parties affected by the divorce decree involved here. The record discloses that respondent Wilds was personally served in the divorce action commenced by Stone, and filed an answer and counterclaim in connection therewith. Wilds also availed herself of the provision contained in the interlocutory judgment of divorce, authorizing her to commence a separate hearing regarding the custody of the minor children, which was held in June 1968. At all stages of the proceedings in California pertinent hereto, Wilds was a party properly before the California courts. If California, in respondent's opinion, lacked the requisite jurisdiction over the parties or subject matter, she never made such objections known to the courts in which she litigated her defenses and sought to obtain positive relief. Well established principles of res judicata now bar her from asserting collaterally such jurisdictional defenses in the Arizona courts. Under the doctrine of res judicata, an existing final judgment, free of fraud or collusion, is conclusive as to every point decided therein *and also as to every point raised by the record which could have been decided with respect to the parties.* Day v. Wiswall's Estate, 93 Ariz. 400, 381 P.2d 217 (1963); State v. Forteson, 8 Ariz.App. 468, 447 P.2d 560 (1968); Di Orio v. City of Scottsdale,

2 Ariz.App. 329, 408 P.2d 849 (1965). It is abundantly clear that the issue of California's jurisdiction to proceed was a matter which could have been raised by respondent Wilds at any of the aforementioned stages where she appeared, and her failure to do what could have been done then, precludes her under *res judicata* from doing so now. In accordance with the foregoing, this Court feels it unnecessary to consider anew whether the California statutory residence period to vest the California courts with jurisdiction to proceed had been complied with, holding that jurisdiction to proceed is always a necessary determination made by a court in any proceeding and that respondent's silent acquiescence in that determination, when personally present before the court making such a determination, may not be now broken to suit her convenience. This Court therefore finds that the California decree was not subject to any jurisdictional invalidity.

■ Except for the most compelling reasons the Arizona courts will not exercise jurisdiction to affect a custody decree, rendered by a sister state having jurisdiction over the subject matter and parties thereto, *where the party petitioning our courts for relief has wrongfully retained such custody in Arizona for the purpose of frustrating a sister state's lawful decree.* Johnson v. Johnson, *supra*; Brown v. Brown, *supra*. Such custody in Arizona, no matter how long continued, cannot confer upon our courts jurisdiction to become an accessory to such practices. Additionally, our Supreme Court has stated in vigorous language that the unlawful abduction of a minor child from the state of lawful custody to Arizona cannot work a change in the child's domicile so as to put the issue of the child's welfare resulting from such custody before our own courts.

"However, we wish to make it indelibly clear that our holdings do not countenance the 'stealing' of a child and taking it to another state for the purpose of obtaining jurisdiction there. That would not change the legal domicile of the child." (Footnote omitted). Johnson v. Johnson, *supra*, 105 Ariz. at 240–241, 462 P.2d at 789–790.

*See, also,* Brown v. Brown, *supra*; Application of Lorenz, 194 Or. 355, 241 P.2d 142, 242 P.2d 200 (1952). Thus we are faced with a situation where minor children, in the lawful custody of the petitioner, were abducted by the respondent and brought into this jurisdiction. Under such circumstances, barring exceptional cases of temporary custody arising out of immediate emergency, the Arizona courts will not interfere with the valid decree of a sister state. We find no emergency fact situation which would justify temporary custodial changes here.

In our opinion the following statement from Brown v. Brown, *supra*, is dispositive of this case.

"Abductions should not be recognized as giving courts jurisdiction. To do so would encourage actions which could result in sorrow and anguish to the parent who would not know the whereabouts of a child which had been abducted, and which could be detrimental to the child's physical and mental well-being. It would permit and encourage parents, dissatisfied with one court, to take a child unlawfully to another state and conceal its whereabouts until they were ready to apply for custody in a state in which it was believed the court would be more favorable." 105 Ariz. at 276, 463 P.2d at 74.

The order entered by the trial court is reversed on all matters covered thereby, and the matter remanded with directions to grant the relief requested by Stone in his habeas corpus petition filed in the trial court.

JACOBSON, P. J., and EUBANK, J., concur.