574 P.2d 31
Jerald Brent McNEAL, Petitioner,

v.

The Honorable T. J. MAHONEY, Judge of the Superior Court and Warren G. McNEAL and Coriene F. McNeal, husband and wife, Real Parties in Interest, Respondents.

No. 13436–PR.

Supreme Court of Arizona,
In Banc.

Dec. 16, 1977.

Rehearing Denied Jan. 17, 1978.

**544**

Stanfield, McCarville, Coxon, Cole & Fitzgibbons by A. Thomas Cole, Casa Grande, for petitioner.

Harry Bagnall, Coolidge, for respondents.

GORDON, Justice:

On September 15, 1976, custody of Cindy McNeal was given to her father, Jerald McNeal, pursuant to a Texas divorce decree. It was stipulated by the parties that in November, 1976, Jerald delivered Cindy to his parents, Warren and Coriene McNeal, on a temporary basis until Jerald was established in a new job and residence in Georgia. The grandparents reside in Pinal County. It was further stipulated that Warren and Coriene McNeal have refused to return the child to Jerald since he first made a demand for her return in February, 1977.

On July 11, 1977, Warren and Coriene McNeal filed a petition in the Superior Court of Pinal County to be appointed tem-

porary guardians of Cindy. The trial judge granted the petition on the same day. No prior notice of these proceedings was given to Jerald.

On August 1, 1977, Jerald McNeal filed a Petition for Writ of Habeas Corpus, which writ was issued by the trial judge. In response, Warren and Coriene McNeal filed a plea in abatement. The trial judge denied the petition for the writ of habeas corpus on September 1, 1977, ordering that the child not be removed from the jurisdiction until further order of the court. The judge gave the following reasons for the order: the natural father voluntarily delivered the child to the grandparents in this jurisdiction; the grandparents had previously secured letters of guardianship; the father had submitted himself to the jurisdiction and the child is subject to this jurisdiction.

On September 9, 1977, Jerald filed a petition for special action in Division Two of the Court of Appeals. Holding that the trial court did not exceed its jurisdiction nor abuse its discretion, the Court of Appeals denied the Petition for Special Action. We granted review in order to resolve important questions as to the limits of the trial court's powers to assume jurisdiction in child custody cases.

In a line of cases beginning with *In re Hughes*, 73 Ariz. 97, 237 P.2d 1009 (1951), this Court has held that Arizona courts have jurisdiction to change the legal custody of a child only if the child is domiciled within the state. *Johnson v. Johnson*, 105 Ariz. 233, 462 P.2d 782 (1969); *Brown v. Brown*, 105 Ariz. 273, 463 P.2d 71 (1969). The domicile of a minor child, in a case where the parents are divorced, is that of the parent to whom legal custody of the child has been given. *In re Hughes, supra.* Hence, the law has been that Arizona courts do not have jurisdiction to alter a custody decree if the party to whom custody has been awarded is domiciled in another jurisdiction.

In articulating the reasons for this rule, both *Brown* and *Johnson, supra,* quoted the following passage from *Ex Parte Lorenz*, 194 Or. 355, 242 P.2d 200, 203 (1952):

"The rule we have adopted will, as a whole, tend to discourage kidnapping, as well as contempt for the lawful decrees of a court of a sister state. An opposite rule, as contended for by defendant, would not only place the stamp of approval upon kidnapping and contempt, but would make this state a mecca for all persons seeking to evade the jurisdiction of the courts of the state of their original domicile. It would amount to a tacit admission, at least, that our own decrees in similar situations are of no effect beyond our boundary lines.

"We quote from the author of the note in 4 A.L.R.2d at page 15, as follows:

"'In a few cases, notably those from the state of Washington, it has been the policy of courts, on finding the child within its borders but domiciled in another state, not to decide the question of proper custody on the merits—barring exceptional cases of temporary custody arising out of immediate emergency—* * *.

"'*It is submitted that the adoption of such a policy by the courts generally would tend to discourage kidnapping by parents or evasion of the jurisdiction of the domicil by physical removal elsewhere. To be sure, the courts generally profess to condemn such conduct, but so long as a party has reason to believe that he may fare better in a foreign court, the assumption of jurisdiction by foreign courts will tend to encourage the practice.*' (Emphasis in original.)" *Brown v. Brown*, 105 Ariz. at 274–75, 463 P.2d at 72–73; *Johnson v. Johnson*, 105 Ariz. at 241, 462 P.2d at 790.

Although the standard was developed to discourage kidnapping, a recent Arizona case has applied the jurisdictional requirement that the child be domiciled in Arizona to cases where the child is brought into the state legally, but retained here wrongfully. *Deatrick v. Galligan*, 18 Ariz.App. 171, 500 P.2d 1159 (1972). This occurs most commonly when the custodial parent, domiciled in another state, delivers the child to the noncustodial parent pursuant to the visita-

tion rights of the latter and the noncustodial parent refuses to redeliver the child at the agreed time. We agree that these cases should be treated substantially the same as cases where there has been an abduction.

The central issue to be resolved in this case is whether the case law has been modified by recent legislation. A.R.S. § 25–331 A. (1973) states:

"The superior court for the state of Arizona is vested with jurisdiction to decide child custody matters by initial determination or modification decree[1] if:

\*  \*  \*  \*  \*  \*

"2. It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships."

■ Since the elements of A.R.S. § 25–331(A)(2) can be satisfied even though the child is domiciled elsewhere, the effect of the legislative substitution of "significant connection" for "domicile" as the jurisdictional touchstone is to enlarge beyond the case law of this state the power of Arizona courts to hear child custody matters. While the domicile of a child is not changed from that of the parent with lawful custody when his presence in this state is due to the wrongful acts of one of the contestants, *Brown v. Brown, supra*; *Johnson v. Johnson, supra*, the determination of whether a child has a "significant connection" to this state can be affected by the fact that the child is physically present here regardless of whether that presence might be the result of wrongful conduct. Hence, on its face, the provision would authorize the exercise of jurisdiction even in cases where the child was brought into the state illegally or retained here wrongfully.

■ Subsection B of A.R.S. § 25–331 states, " \* \* \* physical presence in this state of the child, or the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination." In our opinion, this provision evidences a legislative intent to limit or qualify the broad grant of jurisdiction under subsection (A)(2) and to preserve the existing practice of refusing to accept jurisdiction in cases where the child is brought into the state illegally or retained here wrongfully.

■ The problem with subsection B, however, is that as it is currently worded, it will rarely be applicable to the normal wrongful retention fact situation. Whenever a child is wrongfully retained in Arizona the party with legal custody invariably travels to Arizona to file a petition for habeas corpus or to respond to a petition for change of custody filed by the party who has wrongfully retained the child. Since both opposing parties are then before the court, the limitation carved out by subsection B for cases when only one contestant is before the court does not apply, and the grant of jurisdiction under (A)(2) stands unqualified.

■ Even though A.R.S. § 25–331(A)(2) apparently grants the courts of this state jurisdiction to hear child custody cases where the significant connection of the child to the state arises, in part, because of some form of wrongful retention, we still think our courts should refuse to hear most such cases. We agree with the Court of Appeals that a distinction must be made between *lack* of jurisdiction and *non-exercise* of jurisdiction. *Graton v. Graton*, 24 Ariz.App. 194, 537 P.2d 31 (1975). While, in light of A.R.S. § 25–331, it would be incorrect to say that Arizona courts lack jurisdiction to hear such cases, we feel that barring exceptional cases of temporary custody arising out of immediate emergency, our courts should continue to refuse to exercise jurisdiction over child custody matters where

---

1. While the lower court did not issue a decree which, by its terms, changed the legal custody of the child, it is our opinion that the court's

refusal to order immediate delivery of the child to her father must be regarded as a modification of the Texas custody decree.

the child's presence in Arizona at the time of the suit is the result of his being kidnapped and brought into Arizona or his being wrongfully retained here.

█ Turning to the case sub judice, Mr. and Mrs. McNeal's violation of their agreement to deliver Cindy to her father at the agreed time must be regarded as a wrongful retention. Hence, unless the grandparents can demonstrate exceptional circumstances arising out of an immediate emergency, the trial court should refuse to exercise jurisdiction under A.R.S. § 25–331(A) to modify the Texas decree awarding custody to Jerald.[2]

█ The fact that the grandparents have been appointed temporary guardians of Cindy McNeal does not affect our analysis of whether the trial court should exercise jurisdiction to modify the custody decree. A.R.S. § 14–5204 states, "The court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order." Since Jerald McNeal's custody rights have not been terminated, and since his conditional delivery of Cindy to his parents did not operate to suspend his rights by circumstances, we find that the trial judge was without authority to appoint even a temporary guardian for Cindy. See *Morales v. Glenn*, 114 Ariz. 327, 560 P.2d 1234 (1977).

The order of the Court of Appeals denying the petition for special action is vacated. The case is remanded to the trial court for proceedings not inconsistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.

---

2. In our recent case, *Smart v. Cantor et al.*, 117 Ariz. ——, 574 P.2d 27 (filed this day), we determined that A.R.S. § 25–331(D) and (E) provide the correct procedure for filing a petition for habeas corpus in a child custody matter. Hence, while the lower court should refuse to exercise jurisdiction to change or modify the Texas custody decree, it should exercise jurisdiction for purposes of granting the writ of habeas corpus and ordering any change of physical custody necessary to enforce the existing custody decree.