*874 P.2d 1000*

Anthony CANTY, Petitioner–Appellee,

v.

**Manuelita CANTY, Respondent–Appellant.**

**No. 1 CA–CV 91–0594.**

Court of Appeals of Arizona, Division 1, Department B.

May 10, 1994.

Dale K. Patton, Jr., Winslow, for appellee.

Lewis and Roca by Susan M. Freeman, David M. Bixby, Phoenix, for appellant.

## OPINION

WEISBERG, Presiding Judge.

Manuelita Canty ("Manuelita") appeals from the superior court's order granting Anthony Scott Canty's ("Scott") petition to modify a custody order. We find no error or abuse of discretion, and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

Manuelita and Scott were married in 1978. They have three children: Cheyenne, Jessica, and Jared. In 1988, Scott filed a petition for dissolution of marriage. Filed with the petition was a proposed joint custody agreement in which Manuelita and Scott agreed to joint legal custody of all three children, with Manuelita having physical custody of Cheyenne and Jessica, and Scott having physical custody of Jared. In September 1988, the trial court approved the joint custody agreement and entered a decree of dissolution. Two days after the decree was entered, Manuelita and her daughters left for the Fort Peck Reservation in Montana.

In December 1988, Manuelita, Cheyenne, and Jessica returned to Arizona to travel with Scott and Jared to visit Scott's family in South Carolina. Manuelita alleged that, during this visit, Scott committed an act of domestic violence against her in the presence of their children. Scott admitted committing an act of domestic violence, but not to the extremes alleged by Manuelita.

In January 1989, Scott petitioned for sole custody of all three children and filed a motion for a temporary restraining order to prevent Manuelita from returning to Montana with their daughters. In connection with this petition, while meeting with a court-appointed psychologist, Manuelita and Scott reached an agreement to modify the custody arrangement and signed it in the psychologist's presence. The modification agreement provided that Scott would have physical custody of Cheyenne and Jared, while Manuelita would retain physical custody of Jessica. Although the psychologist presented the modification agreement to the court with her report, and the court noted in a minute entry that the parties had settled the matter, neither party sought a formal modification order and none was entered. Manuelita returned to Montana with Jessica shortly after executing the modification agreement.

In August 1989, Manuelita and Jessica returned to stay with Manuelita's relatives in Arizona. Although she remained in Arizona for over five months and obtained an Arizona post office box, Manuelita testified that she did not intend to abandon her Montana residence. She left most of her belongings in Montana and continued to maintain her Montana post office box. Manuelita alleged that during this time Scott committed another act of domestic violence against her in the presence of their children. Scott denied this allegation.

Manuelita returned to Montana on January 25, 1990, leaving Jessica behind to spend February with Scott and the other children in accordance with the modification agreement. At the end of February, Manuelita agreed to Scott's request that Jessica remain in Arizona through March 15, so that she could spend her birthday with her siblings. Scott did not, however, return Jessica to Montana as promised. Instead, he filed his second petition for custody modification seeking sole legal custody of all their children. He also sought an order for temporary custody, a temporary restraining order, and an order to show cause.

On March 29, 1990, Manuelita filed a petition in the Fort Peck tribal court to modify custody. The Fort Peck court held the petition in abeyance while the Arizona court determined whether to take jurisdiction.

On March 30, 1990, Manuelita filed a motion to dismiss the Arizona petition, asserting that the court lacked jurisdiction under the Uniform Child Custody Jurisdiction Act ("UCCJA") because (1) Jessica's domicile was Montana and (2) it was in Jessica's best interest for the Montana tribal court to take jurisdiction. After a hearing, the Arizona court held that it had jurisdiction and ordered further psychological examinations of all family members.

In September 1990, Manuelita filed a second motion to dismiss, arguing that Scott's second petition (1) had been filed prematurely, (2) failed to set forth necessary changed circumstances, and (3) constituted harassment. The court denied her second motion "as being untimely, dealing with a matter previously ruled upon." The court held a custody hearing on February 21, 1991. After hearing the testimony and taking the matter under advisement, the court ruled that Jessica's best interests would be served by being in Scott's custody, with all the children spending the summer with Manuelita. Judgment was entered accordingly and Manuelita timely appealed. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–2101(B).

### ISSUES

To resolve the appeal, we must determine the following issues:

(1) whether, pursuant to the UCCJA, the trial court should have exercised jurisdiction to change child custody,

(2) whether Scott's second petition was filed prematurely in light of A.R.S. section 25–332(L), and

(3) whether there was sufficient evidence of a change in circumstances.

## DISCUSSION

### A. Jurisdiction

#### 1. Exclusive Modification Jurisdiction

Manuelita argues that the superior court lacks jurisdiction under the UCCJA, adopted in Arizona as A.R.S. sections 8–401 to 8–424, and that the Fort Peck tribal court has jurisdiction because she and Jessica were domiciled in Montana. She primarily relies on UCCJA section 3, which vests jurisdiction in the superior court to enter a child custody order only if Arizona is the child's domicile or home state, or if the best interest of the child dictates that the superior court assume jurisdiction. *See* A.R.S. § 8–403(A)(1), (2).

■ Manuelita's argument, however, fails to take into account UCCJA section 14, which provides the following:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this State that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this [chapter] or has declined to assume jurisdiction to modify the decree, and the court of this State has jurisdiction.

A.R.S. § 8–414(A). Under the prevailing view of the UCCJA, a court that has made a valid custody determination presumptively retains exclusive jurisdiction over that decree. This exclusive jurisdiction continues until the state that entered the decree loses substantial contact with the child. *See Kumar v. Superior Ct.*, 32 Cal.3d 689, 186 Cal. Rptr. 772, 776, 652 P.2d 1003, 1007 (1982) (citing Bridgette M. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, 14 Fam. L.Q. 203, 214–15 (1981)). "[P]etitions for modification must be addressed to the state which rendered the original decree if that state had and retains jurisdiction under the standards of the act." *Id.* 186 Cal.Rptr. at 778, 652 P.2d at 1009.

Prior to the passage of A.R.S. section 8–414, Arizona courts had rejected the concept of continuing jurisdiction because Arizona's version of UCCJA section 3 varies from the model act in a slight, but significant way. While the uniform act provides for jurisdiction if "[t]his State is the home state of the child," UCCJA § 3(A), Arizona provides for jurisdiction if "[t]his state is the *domicile or* the home state of the child." A.R.S. § 8–403(A) (emphasis added). Arizona is the only state with this variation in the text of section 3(A). *Loper v. Superior Ct.*, 126 Ariz. 14, 16, 612 P.2d 65, 67 (App.1980). Consequently, this court interpreted the act as favoring jurisdiction in the state of domicile. *Carlson v. Brown*, 118 Ariz. 387, 391, 576 P.2d 1387, 1391 (App.1978) ("We perceive it is the intent of the [UCCJA] to create a species of presumption or predilection in favor of the exclusive exercise of jurisdiction at the state of domicile."); *see also McNeal v. Mahoney*, 117 Ariz. 543, 545, 574 P.2d 31, 33 (1977) ("Arizona courts do not have jurisdiction to alter a custody decree if the party to whom custody has been awarded is domiciled in another jurisdiction."). Notwithstanding, we hold that *Carlson*'s presumption in favor of the jurisdiction of the domiciliary state is no longer viable in Arizona.

When *Carlson* was decided, Arizona had not yet adopted UCCJA section 14. Subsequently, the legislature enacted a revised uniform act, which included it. The courts of several states have interpreted UCCJA section 14 as evincing a policy of continuing, exclusive jurisdiction in a state to modify its own decree. *See, e.g., In re Leyda*, 398 N.W.2d 815, 819 (Iowa 1987); *Hamill v. Bower*, 487 So.2d 345, 347–48 (Fla.App.1986); *Funk v. Macaulay*, 457 N.E.2d 223, 227 (Ind. App.1983); *Clarke v. Clarke*, 126 N.H. 753, 496 A.2d 361, 364 (1985); *Neger v. Neger*, 93 N.J. 15, 459 A.2d 628, 636 (1983); *Sinclair v. Albrecht*, 287 S.C. 20, 336 S.E.2d 485, 487–88 (App.1985). We agree and hold that, assuming it has not lost significant contact with the child, the Arizona court retains exclusive continuing jurisdiction under UCCJA to modify its own custody decree.

■ Although the superior court did not hold a hearing to determine whether Arizona had lost significant contact, under the cir-

cumstances of this case that failure is not significant. The record indicates the following significant contacts with Arizona: Scott exercised his visitation rights here, there was substantial evidence here regarding custody, and Jessica's siblings resided here. These contacts are sufficient to maintain continuing jurisdiction. *See Kumar,* 186 Cal.Rptr. at 778–79, 652 P.2d at 1009–10.

### 2. Misconduct

Manuelita argues that Arizona does not have jurisdiction because Scott improperly retained Jessica in Arizona at the end of the agreed visitation period. Such misconduct is serious and may result in a court declining to exercise jurisdiction either in an initial custody proceeding or in a modification of a custody decree of another state. *See* A.R.S. § 8–408. In interpreting this section and older law, the supreme court has recognized the seriousness of a parent's wrongful failure to redeliver a child at the agreed time after visitation. *See McNeal,* 117 Ariz. at 546, 574 P.2d at 34 (grandparents wrongfully refused to return child to father). A.R.S. section 8–408 does not apply to this situation, however, since the proceedings in the trial court involved neither an initial decree nor a modification of another state's decree. Scott's refusal to return Jessica at the agreed time therefore had no effect on the superior court's jurisdiction. Under A.R.S. section 8–414, the superior court maintained continuing jurisdiction over its original decree. Scott's misconduct was inappropriate, but it did not require the court to decline to exercise its jurisdiction.

### B. Timeliness of the Petition

Manuelita next argues that Scott's second petition should have been dismissed because it was filed less than one year after the parties signed the modification agreement. She relies on the following statute:

> No motion to modify a custody decree may be made earlier than one year after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may seriously endanger the child's physical, mental, moral or emotional health.

A.R.S. § 25–332(L). Manuelita acknowledges that the modification agreement was never formalized into a custody decree, but argues that the statute should apply nonetheless. The issue presented is whether the modification agreement should be considered a decree for the purposes of this statute.

When enacting A.R.S. section 25–332(L), the legislature was faced with two competing interests: the need for stability in the child's life versus the need to change a previous order if that is necessary to place the child in a more suitable environment. To provide the necessary stability, the legislature established two requirements. First, it mandated a period of one year during which custody could not be changed, absent compelling circumstances. Second, it chose a definite date from which to compute that time period: the date of the previous custody decree.

The party's custody modification agreement was not binding on the court. *Solomon v. Solomon,* 5 Ariz.App. 352, 355, 427 P.2d 156, 159 (1967); *Cone v. Righetti,* 73 Ariz. 271, 275–76, 240 P.2d 541, 544 (1952); *Bailey v. Bailey,* 3 Ariz.App. 138, 141, 412 P.2d 480, 483 (1966). Although Manuelita correctly points out that a court will generally accede to such stipulations, *see Bailey,* 3 Ariz.App. at 141, 412 P.2d at 483, a court must do more than consider the wishes of the parents; it must still consider the best interests of the children, *see* A.R.S. § 25–332(A), and thus must be free to reject the parents' stipulation. We cannot accept Manuelita's assertion that it was a foregone conclusion that the superior court would have approved the stipulation.

Because the language of the statute is clear and unambiguous, we must give effect to that language. *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). The time limit in question starts running from the date of the previous custody decree. Because the modification agreement was not a decree, the second petition was not filed too early.

Manuelita alternatively argues that the doctrine of equitable estoppel should ap-

ply to prevent Scott from denying the status of the modification agreement as a decree. She points out that he accepted the benefit of the agreement and now attempts to disclaim its effectiveness. Although in similar situations equitable estoppel might apply,[1] we believe it does not in this case. Public policy, enunciated through the clear language of A.R.S. section 25–332, requires that the trial court review all modification agreements to confirm that they are in the best interest of the children. Equity cannot apply to invalidate the public policy behind this requirement of trial court review. *See Pacific Greyhound Lines v. Sun Valley Bus Lines, Inc.,* 70 Ariz. 65, 72, 216 P.2d 404, 409 (1950) (when the issue involves public policy estoppel does not apply). We therefore hold that the second petition was not filed prematurely.

### C. Sufficiency of the Evidence
#### 1. Evidence of Domestic Violence

Manuelita next argues that the trial court did not comply with statutory law when considering the alleged incidents of violence. *See* A.R.S. § 25–332(B) ("The court shall consider evidence of domestic violence as being contrary to the best interests of the child."). In its order, the court stated the following:

> The court finds as a fact that although domestic violence was alleged, such domestic violence, because of the length of time that has passed since such violence, is no longer relevant and that, in any case, there was no relevance shown at trial as to the care and protection and best interests of the children.

Manuelita argues that the court erred because she did not need to show any detrimental effects on the children since the statute requires the court to presume such effects. Thus, she argues, the finding is erroneous and requires reversal. We disagree.

The statute requires the court to consider the violence as a *factor* against the perpetrator. It does not, however, require that the presence of this factor must automatically tip the scales against the offending

spouse. The trial court appears to have weighed the evidence of domestic violence and decided that, weighed against the other factors, it did not require a different result. We cannot say that the trial court abused its discretion.

#### 2. Evidence of Changed Circumstances

Finally, Manuelita argues that there was insufficient evidence of changed circumstances to warrant a change in custody. To change a previous custody order, the court must determine whether there has been a material change in circumstances affecting the welfare of the child. *See, e.g., Pridgeon v. Superior Ct.,* 134 Ariz. 177, 179, 655 P.2d 1, 3 (1982).

Manuelita argues that the court erred in changing custody because in its minute entry issued following the hearing it did not specifically find such change in circumstances. Although she acknowledges that the court did make specific findings of changed circumstances in its formal order, which was prepared by Scott's counsel, she contends that these findings were invalid because they were contrary to the court's minute entry. We disagree.

We assume that the trial court would not sign a judgment that inaccurately reflected its findings of fact. In the instant case, the formal judgment is more detailed than the minute entry, but it is not contrary to it.

Manuelita also challenges the evidence supporting each of the changed circumstances that the court found. We will not address each of these arguments because we find there was sufficient evidence to support at least one finding: that the joint custody arrangement was no longer logistically possible.

The trial court has broad discretion in determining changed circumstances. *In re Wise,* 14 Ariz.App. 125, 126, 481 P.2d 296, 297 (1971). Also, the court must consider whether a joint custody arrangement is "logistically possible." A.R.S. § 25–

---

1. *See Heltzel v. Mecham Pontiac,* 152 Ariz. 58, 61, 730 P.2d 235, 238 (1986) (elements of estoppel are conduct that induces another to believe certain facts, inducement resulting in acts in reliance thereon, and a resulting injury).

332(E)(4). In this case, the original joint custody agreement reflected the parties' assumption that they would be living near each other. That circumstance later changed. The court did not abuse its discretion by holding that the joint custody arrangement in the instant case became logistically impossible when Manuelita and Jessica moved to Montana while the rest of the family remained in Arizona.

We further reject Manuelita's argument that her relocation to Montana did not constitute a change in circumstance because she had already moved at the time of the original decree. Scott and Manuelita entered into the joint custody agreement before she had moved. Furthermore, there is nothing in the record to indicate that the judge was aware of Manuelita's move at the time he entered the original decree. We therefore conclude that Manuelita's move to Montana was a change in circumstance that the trial court could consider.

## CONCLUSION

We affirm the trial court's judgment. Manuelita requests attorney's fees pursuant to A.R.S. § 25–332(M), which provides for awarding attorney's fees against persons pursuing a vexatious or harassing modification action. Because we affirm the judgment, we deny the request.

TOCI and CONTRERAS, JJ., concur.