548 P.2d 429

**AGRICULTURAL EMPLOYMENT RELATIONS BOARD, Appellant,**

v.

**UNITED FARM WORKERS OF AMERICA, AFL–CIO, a Labor Organization, Richard Cook, Pat Bonner and Peter Kerr, Appellees.**

**No. I CA–CIV 2818.**

Court of Appeals of Arizona, Division 1, Department A.

April 15, 1976.

Rehearing Denied May 26, 1976.

Review Denied June 22, 1976.

Robert E. Dickelman, Gen. Counsel, Agricultural Employment Relations Bd., Phoenix, for appellant.

James M. Rutkowski, Phoenix, for appellees.

## OPINION

FROEB, Judge.

In 1972, the Arizona legislature enacted a comprehensive farm labor law relating to agricultural labor relations. A.R.S. § 23–1381 et seq. Under the act, an agricultural employment relations board (the "Board") was created and given authority to deal with unfair labor practices. The law also provides that the superior court is given jurisdiction to deal with farm labor issues. The primary question on appeal is whether the jurisdiction to adjudicate unfair labor practices is concurrent as between the Board and the superior court or whether the exclusive primary jurisdiction of such matters is in the Board.

This case was brought by special action in the superior court by the United Farm Workers of America, Richard Cook, Pat Bonner and Peter Kerr (collectively referred to here as "UFW") against the Board and Safeway Stores, Inc. to bar the Board from taking jurisdiction of a complaint filed by Safeway alleging certain illegal boycott activities by the UFW. The trial court held that the Board had no jurisdiction over the controversy because the superior court in an earlier case had taken jurisdiction over the dispute. Accordingly, the trial court issued an injunction against further Board proceedings. Safeway did

not join in the appeal now brought by the Board.

## THE PRIOR SUPERIOR COURT CASE

On June 12, 1973, Safeway Stores, Inc. filed an action in the Maricopa County Superior Court (No. C–278338) seeking damages and injunctive relief against the UFW because of certain unfair labor practices in violation of A.R.S. § 23–1385(B). A motion by the Board to intervene in the case was denied. On June 22, 1973, the superior court found that the UFW had organized a campaign to persuade the public to buy only grapes and lettuce produced by growers who had contracts with the UFW and to boycott grapes and lettuce produced by growers who did not have contracts with the UFW; that the purpose of the campaign was to force growers of grapes and lettuce to recognize the UFW as bargaining agent for agricultural employees; that the UFW also organized a nationwide campaign to induce the buying public to refuse to patronize Safeway so long as it sold grapes and lettuce produced by growers who did not recognize the union as bargaining agent for their agricultural employees.

The court also found that representatives of UFW picketed the Safeway stores in Phoenix and Tucson with placards, distributed handbills and talked with potential Safeway customers entering the stores concerning their purposes.

In general, the court concluded that the UFW was guilty of engaging in a secondary boycott by picketing in violation of A.R.S. § 23–1385(B)(6) but found that the UFW was not guilty of certain other claimed unfair labor practices set forth in A.R.S. § 23–1385(B) or of combining to restrain trade in violation of A.R.S. §§ 44–1401—1408. A finding was also made that the union activities at one of the Safeway stores was a trespass.

In its judgment and decree, the superior court granted an injunction against the offending conduct but denied an injunction prohibiting the union from picketing Safeway stores for the purpose of publicizing the union's dispute with grape and lettuce growers. It likewise denied an injunction against urging persons to purchase grapes and lettuce produced by growers who did not have contracts with the UFW. There then followed several modifications of the original judgment, the details of which are unnecessary to this case. On February 27, 1974, a judgment granted a permanent injunction taking into account prior modifications was entered. No appeal was taken from any of those proceedings.

## THE ORIGIN OF THE PRESENT CASE

Following the order for injunction on June 22, 1973 in the prior case (No. C–278338), a complaint was issued by the Board's general counsel on August 14, 1973 (Case No. 3–673) alleging that the UFW had violated certain provisions of A.R.S. § 23–1385(B) with respect to its activities at the Safeway stores. These activities had been the subject of the injunction proceeding in Cause No. C–278338, and related to picketing, handbilling and oral communications with customers at the stores. The UFW responded to the complaint with a motion to dismiss on the ground that the events complained of were fully adjudicated in the prior court action. The motion was denied by the trial examiner appointed by the Board. Thereafter, the UFW filed its answer to the complaint before the Board on January 8, 1974 and brought this special action in superior court to stay all proceedings and restrain the Board from assuming jurisdiction over the matter. The trial court granted a preliminary injunction, later made permanent, enjoining all further proceedings before the Board in case No. 3–673. In doing so, the trial court found that the violations charged in the complaint before the Board were the same as the subject of the complaint before the trial court in the prior case (Cause No. C–278338). The trial court concluded that A.R.S. § 23–1393(A) gave the superior court concurrent jurisdiction with the Board to determine if the provisions of A.R.S. § 23–1385 had been violat-

ed. As a result of the assumption of jurisdiction by the superior court in the prior case (Cause No. C–278338), the trial court held that the Board was without jurisdiction in the controversy. The trial court concluded that the doctrine of res judicata was also a bar to further hearing of the matter by the Board. Thereafter, the Board filed a petition for special action before the Supreme Court to set the injunction aside. The Supreme Court declined jurisdiction. We thus come to the present appeal.

## THE ISSUES BEFORE THIS COURT

The Board contends that the superior court lacks jurisdiction to decide on the merits whether a violation of A.R.S. § 23–1385 has occurred, contending that only the Board has authority under the act to make this determination and to fashion an appropriate remedy. It argues that the jurisdiction given to the superior court is to enforce the orders of the Board and to adjudicate claims for damages suffered as a result of violations of the act. It contends that the provisions giving the court jurisdiction to grant injunctive relief is only an adjunct of the suit for damages. In other words, it contends that the Board and only the Board has exclusive jurisdiction to determine and act upon unfair labor practices in the first instance and that the role of the court is limited to restraining conduct until the Board can determine the merits and therefore to grant permanent injunctive relief and award damages if appropriate.

On the other hand, the UFW argues that the superior court has concurrent jurisdiction with the Board to adjudicate whether a party has committed an unfair labor practice and to exercise its injunctive power without prior determination by the Board.

This is a case of first impression in Arizona, as the farm labor relations act has thus far not been construed by our appellate courts. It would be well therefore to set forth the declaration of policy appearing at the beginning of the act:

It is hereby declared to be the policy of this state that the uninterrupted production, packing, processing, transporting, and marketing of agricultural products is vital to the public interest. It is also declared to be the policy of this state that agricultural employees shall be free to organize, to take concerted action, and through representatives of their own choosing enter into collective bargaining contracts establishing their wages and terms and conditions of employment; or to refrain from engaging in any or all such activities. It is further declared that there now exists an inequality of bargaining power between agricultural employers and labor unions, arising out of the seasonable character and perishable nature of such agricultural products, the mobility of agricultural labor, and the fundamental differences between agriculture and industry. While the right to strike is a basic right of organized labor, such right must take into account the perishable character and the seasonal nature of agricultural products and must be limited and regulated accordingly. It is the intent of the legislature to provide a means to bargain collectively which is fair and equitable to agricultural employers, labor organizations and employees; to provide orderly election procedures to resolve questions concerning representation of agricultural employees and to declare that certain acts are unfair labor practices which are prohibited and subject to control by the police power of this state. The overriding special interest of the state of Arizona with respect to certain secondary boycott activities originating in this state, but extending across state lines and directed at employers in other states, must be recognized, and such acts must be made unlawful and subject to control by the police power of this state. [A.R.S. § 23–1381]

The act was patterned after the Federal Labor Management Relations Act of 1947, as amended, and is similar in many respects. In several significant respects, however, it is different, one of which is the extent to which the court is given jurisdiction over labor disputes and unfair labor practices. Agricultural labor is specifically exempted from the federal act. It is apparent from the declaration of policy quoted above that the Arizona legislature felt that the problems of agricultural labor required certain departures from the federal pattern of settling labor disputes appearing in the Labor Management Relations Act.

■ In general, the farm labor relations act establishes an agricultural board with power and authority to consider various labor relations matters and unfair labor practices and to conduct hearings and issue cease and desist orders. A.R.S. §§ 23–1386 through 23–1392. As the Board may not itself issue injunctions, it may seek court action to back up its determinations. A.R.S. § 23–1390. It is quite clear from the act that the Board is authorized to consider unfair labor practices where a complaint is made before it and to decide the merits of the claim.

In support of its contention that the superior court has concurrent jurisdiction with the Board to adjudicate unfair labor practices, the UFW relies primarily upon the language of A.R.S. § 23–1393(A) which states:

Any person who is aggrieved or is injured in his business or property by reason of any violation of this article, or violation of an injunction issued as provided in this section, may sue in any superior court having jurisdiction of the parties for recovery of any damages resulting from such unlawful action, regardless of where such unlawful action occurred and regardless of where such damage occurred, including costs of the suit and reasonable attorney fees. Upon the filing of such suit the court shall also have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper. Petitions for injunctive relief or temporary restraining orders shall be heard expeditiously. Petitions for temporary restraining orders alleging a violation of § 23–1385 shall be heard forthwith and if the petition alleges that substantial and irreparable injury to the petitioner is unavoidable such temporary restraining orders may be issued pursuant to Rule 65 of the Arizona Rules of Civil Procedure.

■ We hold that under § 23–1393(A) the superior court has jurisdiction to determine, without prior adjudication by the Board, that a party has engaged, or is continuing to engage, in an unfair labor practice, and to grant temporary restraining orders and injunctive relief prohibiting such conduct. We note, however, that the statute requires, as a predicate to such an action, a complaint asserting damages. The complaint in the prior superior court case (No. C–278338) did in fact seek damages and complied with the statute quoted above. Therefore the court had jurisdiction to adjudicate the claimed unfair labor practices and to grant injunctive relief. The trial court correctly decided in the present case that the Board could not take jurisdiction to adjudicate the same issues which were decided in the prior superior court action.

■ Our holding is consistent with the rule that where two tribunals have concurrent jurisdiction, the first acquiring jurisdiction retains it to the exclusion of the other until the case is finally determined. See, for example, *Wilson v. Garrett,* 104 Ariz. 57, 448 P.2d 857 (1969); *Davies v. Russell,* 84 Ariz. 144, 325 P.2d 402 (1958); *Scott v. Industrial Accident Commission,* 46 Cal.2d 76, 293 P.2d 18 (1956); *Public Service Co. of Colorado v. Miller,* 135 Colo. 575, 313 P.2d 998 (1957).

It is apparent that the two actions present a substantial identity as to the parties, subject matter, issues involved and relief demanded. The fact that the Board issued the complaint as a public body in

Board case No. 3–673 (after charges were filed by Safeway), whereas the prior court action was brought by Safeway Stores, does not so alter the proceedings as to bar the effect of concurrent jurisdiction.

The Board contends that this construction of the Arizona farm labor relations act is not consistent with the federal Labor Management Relations Act after which it was patterned. With this we agree. Apparently, however, the Arizona legislature chose to depart from an exact replica of the federal legislation relating to labor relations. We think that the declaration of policy, quoted above, indicates that it believed farm labor presented certain unique problems which required the concurrent jurisdiction of the court for their solution.

Furthermore, while we do not purport in this opinion to make a definitive comparison between federal labor laws and our own, it is important to note some significant differences between the two which lend support to our conclusion that the Arizona legislature intended the court to retain concurrent jurisdiction.

At the outset, we note that the United States Supreme Court has interpreted federal law as precluding United States district courts from deciding allegations of unfair labor practices on the merits as they are within the exclusive primary jurisdiction of the National Labor Relations Board (NLRB). *Vaca v. Sipes,* 386 U.S. 171, 179, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967). In addition, 29 U.S.C. § 160(a) reads:

> The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided,* That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufac-

turing, communications, and transportation except where predominately local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith.

The clause "This power shall not be affected by any other means of adjustment or prevention . . . ." has been interpreted as conferring exclusive jurisdiction on the NLRB to prevent unfair labor practices, particularly where one of the parties seeks to foreclose resort to the NLRB by private agreement (with the exception of arbitration agreements) or by proceedings conducted before state courts or state agencies. *National Labor Relations Board v. International Union,* 194 F.2d 698 (7th Cir. 1952); *Independent Stave Co. v. NLRB,* 352 F.2d 553 (8th Cir. 1965); *Lodge 743, Int'l. Ass'n of Mach. v. United Aircraft Corp.,* 337 F.2d 5 (2nd Cir. 1964).

In sharp contrast, the corresponding section of the Arizona act, § 23–1390(A), reads simply: "The board may, as provided in this section, prevent any person from engaging in any unfair labor practice." We find nothing in the Arizona act or in this action which would require an interpretation limiting jurisdiction over the prevention of unfair labor practices to the Board.

Similarly, the powers of the federal courts to enjoin unfair practices are limited by 29 U.S.C. §§ 160(j) and 160(*l*) which provide that the NLRB must first petition the courts for injunctive relief before the courts are empowered to grant such relief.

The Board has identical powers as the NLRB to petition the superior court for injunctive relief. A.R.S. § 23–1390(J) and (K). But unlike the federal scheme, § 23–1393(A), by its terms, allows the court "to grant such injunctive relief or tempo-

**342**

rary restraining order as it deems just and proper." This provision does not appear in the federal act. Apparently our state legislature intended to allow private parties to seek a permanent injunction in superior court as a result of a labor dispute (predicated upon the filing of a complaint for damages) without first seeking relief from the Board.

The unmistakable import of these differences between the federal statutes and the Arizona act is that the Arizona legislature, in creating the Board and specifying its powers, did not intend to deprive the courts of their jurisdiction over labor disputes in effect at the time the farm labor relations act was enacted. As the superior courts exercised complete jurisdiction over labor disputes not within the federal jurisdiction prior to the enactment of the farm labor relations act in 1972, the superior court still retains that jurisdiction concurrently with the Board. In the absence of an express statute removing farm labor disputes from the jurisdiction of the superior courts in the first instance, we reject the argument that the Board was given exclusive primary jurisdiction over these matters. It appears to us that both forums are available and that jurisdiction is concurrent.

In this case, the trial court also determined that the Board could not rehear the same controversy which was before the court in the prior case (No. C–278338) and that the defense of res judicata was applicable. We agree.

The court, in the prior case, heard evidence regarding every contention which was later taken before the Board. The application of each statute cited in the complaint by the Board was briefed and argued by the UFW and Safeway in the prior court proceeding and considered by the court. In that case the court determined that some unfair labor practices were being committed and that others were not, all of which is reflected by the permanent injunction ordered by the court. That judgment then is res judicata as to the

claims later raised before the Board and they cannot be relitigated. *Day v. Estate of Wiswall,* 93 Ariz. 400, 381 P.2d 217 (1963); *Application of Stone,* 14 Ariz. App. 109, 481 P.2d 280 (1971). Although the Board was not a party to the prior case, it is bound because Safeway Stores, Inc. was the real party in interest in both cases.

 Finally, the remedy by way of special action proceeding brought by the UFW in superior court was an appropriate remedy, where it was shown the Board was purporting to act beyond its jurisdiction. *State Board of Technical Registration v. McDaniel,* 84 Ariz. 223, 326 P.2d 348 (1958); *City of Phoenix v. Lane,* 76 Ariz. 240, 263 P.2d 302 (1953).

Affirmed.

DONOFRIO, P. J., and OGG, J., concur.