747 P.2d 574

ARIZONA FARMWORKERS UNION, an Arizona labor organization; Gerardo Almanza; Rafael Rodriguez; Rufino Rodriguez; Samuel Hernandez; Juan Pedroza; and Silvestre Hernandez, Plaintiffs/Appellees,

v.

PHOENIX VEGETABLE DISTRIBU-TORS, an Arizona corporation, Defendant/Appellant.

No. 1 CA–CIV 8199.

Court of Appeals of Arizona, Division 1, Department B.

July 10, 1986.

Review Dismissed Dec. 7, 1987.

Victor Aronow, and Nadine K. Wettstein, Phoenix, for plaintiffs/appellees.

Laurie A. Laws–Coats, Phoenix, for defendant/appellant.

Law Offices of Michael W. L. McCrory by Michael W. L. McCrory, Tucson, for amici American Friend Service Committee; United Church of Christ, Board of Homeland Ministries; General Bd. of the Church of Society United Methodist Church; Mennonite Cent. Committee.

Farmworker Justice Fund by Kristine Poplawski, Washington, D.C., for amicus Farmworker Justice Fund.

## OPINION

FROEB, Chief Judge.

This is an appeal from a preliminary injunction ordering an employer who allegedly committed an unfair labor practice to reinstate six workers. We hold that federal law does not preempt the authority of an Arizona court to order reinstatement of illegal aliens not entitled to work in this country. Further, we hold that the requirements for a preliminary injunction were met and we reject the contention that the superior court should have deferred to the jurisdiction of the Arizona Agricultural Employment Relations Board.

## FACTS

Appellees Arizona Farmworkers Union (AFW) and six of its individual members (workers) filed a complaint on December 26, 1984, alleging that appellant Phoenix Vegetable Distributors (Phoenix Vegetable), in violation of the Arizona Agricultural Employment Relations Act (the Arizona Act), specifically, A.R.S. §§ 23–1361 and 23–1385, blacklisted the workers and committed an unfair labor practice in refusing to rehire them because of their union activities. AFW and the workers also filed a motion for a preliminary injunction ordering Phoenix Vegetable to reinstate the workers.

On January 2, 1985, a hearing was held on the motion for preliminary injunction. At the hearing, one worker, Juan Pedroza, testified as to his past work history with Phoenix Vegetable, his union activities and his attempt to gain employment at Phoenix Vegetable for the 1984–1985 rappini harvest season. Pedroza further testified that he was born in Mexico, he was not a United States citizen and he did not have a document that entitled him to work in this country. The other five workers, although present at the hearing, did not testify. Counsel for the workers made an avowal as to what they would say if called to testify. The avowal did not contain any information as to the birthplace, citizenship or immigration status of the five workers.

The trial court granted the preliminary injunction ordering Phoenix Vegetable to reinstate the five workers and to continue to employ them pending further order of the court. Phoenix Vegetable filed a timely notice of appeal. We granted the motions of American Friend Service Committee; United Church of Christ, Board of Homeland Ministries; General Board of the Church of Society United Methodist Church; Mennonite Central Committee; and Farmworker Justice Fund for leave to file briefs as *amici curiae*.

Phoenix Vegetable argues that the superior court judge abused his discretion in issuing the preliminary injunction ordering reinstatement because:

(1) the superior court should have deferred to the jurisdiction of the Arizona Agricultural Employment Relations Board;

(2) the workers are illegal aliens [1] and therefore are not entitled to reinstatement; and

(3) the legal requirements for the issuance of a preliminary injunction were not met.

We hold that the trial court did not abuse its discretion in ordering Phoenix Vegetable to reinstate the workers.

## I. JURISDICTION OF THE SUPERIOR COURT

■ Phoenix Vegetable contends that the superior court should have deferred to the jurisdiction of the Arizona Agricultural Employment Relations Board (the Agricultural Board) and therefore it abused its discretion in issuing the preliminary injunction.

---

1. Phoenix Vegetable argues that the workers are illegal aliens not entitled to work in the United States. We do not decide whether the evidence presented to the trial court was sufficient for a finding that any of the workers are illegal aliens. Moreover, we do not decide whether a state court possesses the capacity or expertise to make such a determination.

In *Agricultural Employment Relations Board v. United Farm Workers of America*, 26 Ariz.App. 336, 548 P.2d 429 (1976) (*AERB v. UFWA*), this court, in interpreting A.R.S. § 23–1393(A), held that the superior court has jurisdiction over an action brought by the union under the Arizona Act where the complaint asserts damages and the Agricultural Board has not previously acquired jurisdiction over the action. A.R.S. § 23–1393(A) provides, in pertinent part:

> *Any person who is aggrieved or is injured in his business or property by reason of any violation* of this article [the Arizona Act], ... *may sue in any superior court* having jurisdiction of the parties for recovery of any damages resulting from such unlawful action.... Upon the filing of such suit the court shall also have jurisdiction to grant such injunctive relief ... as it deems just and proper. (Emphasis added.)

Phoenix Vegetable urges us to reconsider the decision in *AERB v. UFWA* and hold that the Agricultural Board has exclusive primary jurisdiction over actions brought pursuant to the Arizona Act.

Phoenix Vegetable has failed to raise a persuasive argument for not following *AERB v. UFWA*. In that case, we considered and rejected the argument that the legislature established a separate specialized board with the intent to deprive the courts of jurisdiction over disputes arising under the Arizona Act. We find it persuasive that in the ten years since *AERB v. UFWA* was decided the legislature has not amended A.R.S. § 23–1393(A) to indicate that the courts should be deprived of jurisdiction to hear disputes under the Arizona Act.

Next, Phoenix Vegetable contends that A.R.S. § 23–1393(A) applies only to cases involving strikes and boycotts. We disagree. A.R.S. § 23–1393(A) states that a person who is aggrieved by reason of "any violation" of the Arizona Act may sue in any superior court which has jurisdiction of the parties.

In accordance with the decision in *AERB v. UFWA*, we hold that the superior court

had jurisdiction to grant the preliminary injunction requested by AFW and the workers.

## II. AVAILABILITY OF REINSTATEMENT/APPLICATION OF *SURE-TAN INC. v. NLRB*

 As a remedy for the unfair labor practice charged, the AFW sought reinstatement of the workers. There is no dispute in the case concerning the availability, in general, of this remedy in cases involving an unfair labor practice. It is the availability of the remedy to aliens not entitled to work in the United States which prompts the present dispute.

Phoenix Vegetable argues that as a consequence of the United States Supreme Court's decision in *Sure-Tan, Inc. v. National Labor Relations Board*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), undocumented alien workers are not entitled to reinstatement. In response, AFW, the workers and the *amici* argue that *Sure-Tan* does not apply to the present case for the following reasons: (1) *Sure-Tan* is not applicable to actions brought under the Arizona Act since *Sure-Tan* arises from an action brought under the National Labor Relations Act and is based on federal comity of principles embodied in the Immigration and Nationality Act and the National Labor Relations Act; (2) even if *Sure-Tan* is applicable to cases brought under the Arizona Act, *Sure-Tan* only precludes orders of reinstatement of aliens no longer in this country who would have to cross the border illegally to return to work; and (3) even if *Sure-Tan* is applicable to the present case, Phoenix Vegetable has failed to prove that the workers are aliens not entitled to work in the United States.

We hold that *Sure-Tan* does not limit the power of the Arizona courts or the Arizona Agricultural Employment Relations Board to remedy unfair labor practices committed against illegal aliens not entitled to work in the United States. *Sure-Tan* is not controlling in cases arising under the Arizona Act because federal law does not preempt statutory authority in Arizona allowing reinstatement of aliens

not entitled to work in the United States. In view of this, we do not address the second and third arguments raised by AFW, the workers and the *amici.*

In *Sure–Tan,* the United States Supreme Court found that the employer committed an unfair labor practice under the National Labor Relations Act (NLRA) in reporting its undocumented alien workers to the Immigration and Naturalization Service (INS) in retaliation for the workers' participation in union activities. The Court concluded that under the NLRA an employer can be guilty of an unfair labor practice in its dealings with an alien, notwithstanding the alien's illegal presence in this country. The Court found that the National Labor Relations Board's (NLRB) order for backpay and reinstatement of undocumented alien workers posed a "potential conflict" with the Immigration and Nationality Act's (INA) goal of deterring admission of undocumented aliens into the United States. The Court held that "implementation of the Board's traditional remedies [backpay and reinstatement] at the compliance proceedings must be conditioned upon the employees' legal readmittance to the U.S." (The workers voluntarily departed the United States in lieu of deportation.) The decision was based on NLRB's obligation both to enforce federal labor law and to accommodate the equally important congressional objective of the INA to deter unauthorized immigration. The *Sure–Tan* accommodation analysis was based on the case of *Southern S.S. Co. v. NLRB,* 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246 (1942). *Southern S.S. Co.* mandates that federal agencies accommodate the interpretation and enforcement of their statutes with any other congressional enactments with which they might even *potentially conflict.*

The present case differs significantly from *Sure–Tan* in that it does not involve the enforcement of potentially conflicting federal statutes. We note that the National Labor Relations Act exempts agricultural labor from its provisions and, accordingly, Arizona has enacted agricultural labor laws to regulate farm labor in Arizona. Thus, the question in the present case is whether a state court, enforcing a state agricultural labor law, must restrict its remedies in order to accommodate the congressional objective embodied in the INA. Unlike *Sure–Tan,* the present case involves the concept of federalism. When federalism is involved it is necessary to determine whether federal law has preempted state law.

Preemption may be either express or implied. Preemption is compelled if the command of Congress is explicitly stated in statutory language or implicitly contained in its structure and purpose. Absent explicit preemptive language, Congress's intent to supersede state law altogether may be inferred when "the scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," when "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or when "the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose." *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 675 (1982), quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

Neither the language of the INA nor legislative history indicates that Congress intended to preempt enforcement of state agricultural labor laws. In *De Canas v. Bica,* 424 U.S. 351, 359, 96 S.Ct. 933, 938, 47 L.Ed.2d 43, 51 (1976), the United States Supreme Court held that California's law regulating the agricultural employment of illegal aliens by imposing criminal sanctions on their employers was not necessarily preempted by the INA since "[t]he central concern of the INA is with the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country." In *Toll v. Moreno,* 458 U.S. 1, 14, 102 S.Ct. 2977, 2984, 73 L.Ed.2d 563, 573 (1982) n. 18, the Court stated that it rejected the preemption claim in *De Canas* "not because of an absence of congressional intent to preempt, but be-

cause Congress *intended* that the States be allowed, 'to the extent consistent with federal law, [to] regulate the employment of illegal aliens.'" (Emphasis in original.)

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it *actually conflicts* with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility." *Federal Sav. & Loan Ass'n v. de la Cuesta*, 102 S.Ct. at 3022.

The order of reinstatement entered by the trial court in this case does not actually conflict with federal law. Under the INA, employers are not prohibited from employing undocumented aliens, even those subject to a final order of deportation or awaiting voluntary departure. Thus, an employer can reinstate an illegal alien worker without violating the INA.

An actual conflict also arises when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 102 S.Ct. at 3022. To determine if a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, it is necessary to "consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604, 614 (1977). Enforcement of state agricultural labor laws by illegal alien workers will not be preempted where the state regulation only has "some purely speculative and indirect impact on immigration." *De Canas v. Bica*, 96 S.Ct. at 936.

One purpose of INA is to deter illegal immigration. *Sure–Tan v. NLRB*, 104 S.Ct. at 2815. Therefore, we must determine whether a court's order of reinstatement to illegal aliens stands as an obstacle to the accomplishment of this goal.[2] A

state court order of reinstatement does not restrain or limit the ability of the Immigration and Naturalization Service to deport illegal aliens. Although once reinstated an illegal alien worker may have a greater incentive to remain in the United States, an appropriate federal order of deportation is fully enforceable. Neither a state court order of reinstatement nor a federal order of deportation undermines the authority of the other. Thus, an order of reinstatement would have no more than "some purely speculative and indirect impact upon immigration." Such an impact is insufficient to invoke preemption. We hold, therefore, that a state order of reinstatement does not in fact stand as an obstacle to the accomplishment of INA's goal of deterring illegal immigration.

For the foregoing reasons, we find that the decision of the United States Supreme Court in *Sure–Tan* is not a controlling precedent for actions arising under the Arizona Agricultural Employment Relations Act. Further, we hold that the Immigration and Nationality Act does not preempt the authority of Arizona courts to order reinstatement of illegal aliens not entitled to work in the United States.

## III. PROPRIETY OF PRELIMINARY INJUNCTION AS A REMEDY

■ Phoenix Vegetable contends that the requirements for issuance of a preliminary injunction were not met and therefore the trial court abused its discretion in issuing the injunction. We have reviewed the requirements for a preliminary injunction and find that this contention is without merit and that the trial court properly determined that the requirements were met.

The granting or withholding of a preliminary injunction rests in the sound discretion of the trial court. *Financial Associates, Inc. v. Hub Properties, Inc.*, 143 Ariz. 543, 694 P.2d 831 (App.1984). While we believe the trial court should have consolidated the proceedings for the preliminary

---

2. In discussing this question, we assume, without deciding, that the court can determine who is an illegal alien not entitled to work in this country. AFW, the workers and the *amici* argue that the state courts do not possess the capacity or expertise to make such a determination.

injunction and the permanent injunction into one hearing, as allowed under rule 65(a)(2), Arizona Rules of Civil Procedure, there are factors which support consideration of the matter on a preliminary basis, an extended discussion of which is not necessary.

In view of the statutory provision allowing reinstatement as a remedy and the legitimate interest of the AFW and its workers in seeking vindication of the alleged unfair labor practice, the trial court found the remedy of backpay damages to be inadequate. The record also indicates the trial court weighed in the balance the relative hardships of the parties and considered, after hearing evidence, the likelihood that the AFW and the workers would succeed on the merits. We have reviewed and reject therefor the arguments raised by Phoenix Vegetable relating to the propriety of the preliminary injunction as a remedy.

In accordance with the foregoing, the issuance of the preliminary injunction is affirmed.

MEYERSON, Acting P.J., concurs.

HAIRE, Judge, concurring in part; dissenting in part:

I concur in that portion of the majority opinion which holds that the superior court did not abuse its discretion in refusing to defer to the jurisdiction of the Arizona Agricultural Employment Relations Board. *See Agricultural Employment Relations Board v. United Farm Workers*, 26 Ariz. App. 336, 548 P.2d 429 (1976). If I were in agreement with the majority's analysis concerning the availability of unconditional reinstatement as a remedy, I would also concur with the majority's treatment of the question whether the trial court abused its discretion in issuing a preliminary injunction.

The focus of my disagreement with the majority concerns its analysis and discussion of the effect of the holding of the United States Supreme Court in *Sure–Tan, Inc. v. National Labor Relations Board*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). In *Sure–Tan*, the Court recognized that although the Immigration and Nationality Act did not entirely preclude the application of the National Labor Relations Act to aliens illegally working in the United States,[3] it did require that the availability to them of remedies ordering back pay or reinstatement be severely restricted. Thus, the Court stated:

"[T]he implementation of the Board's traditional remedies at the compliance proceedings must be conditioned upon the employees' legal readmittance to the United States.... By conditioning the offers of reinstatement on the employees' legal reentry, a potential conflict with the INA is thus avoided. Similarly, in computing backpay, the employees must be deemed 'unavailable' for work (and the accrual of backpay therefore tolled) during any period when they were not lawfully entitled to be present and employed in the United States." 104 S.Ct. at 2815.

The essence of the Court's holding is that unqualified availability of back pay and reinstatement remedies to illegal aliens would be contrary to the objectives upon which the Immigration and Nationality Act is based, i.e., "the objective of deterring unauthorized immigration that is embodied in the INA." *Id.*

Whether the Supreme Court's resolution of the conflict it found between the policies underlying the Immigration and Nationality Act and those underlying the National Labor Relations Act be stated in terms of "comity" or "accommodation" is immaterial, since the Court's inescapable conclusion was that, as a matter of federal law, these remedies would not be allowed because they would be contrary to the Immigration and Nationality Act. If these remedies are contrary to the Immigration and Nationality Act so as to preclude utilization by another federal agency, the National Labor

---

**3.** *Sure–Tan* left intact the availability to illegal aliens of the "cease and desist" remedy with its attendant enforcement by contempt proceedings and other penalties. *See id.* at 104 S.Ct. 2815 n. 13.

Relations Board, then *a fortiori,* under the supremacy clause, the Immigration and Nationality Act would preclude the use of the same remedies by a state agency to enforce state law.

I recognize that because the National Labor Relations Act has exempted agricultural labor from its provisions, Arizona is not precluded from enacting its own laws regulating farm labor. This exemption, however, does not support the majority's holding. The important point is that agricultural laborers are not exempted from the Immigration and Nationality Act, and it is *that Act* which under *Sure–Tan* precludes the availability of the questioned remedies. To me the underlying rationale would be the same, regardless of the type of labor involved.

The majority states:

"One purpose of INA is to deter illegal immigration. *Sure–Tan v. NLRB,* 104 S.Ct. at 2815. Therefore, we must determine whether a court's order of reinstatement to illegal aliens stands as an obstacle to the accomplishment of this goal."

I cannot understand why this court must determine whether the trial court's order of reinstatement to illegal aliens stands as an obstacle to the accomplishment of the goals of the Immigration and Nationality Act, since this was the precise legal issue considered and determined by the Supreme Court in *Sure–Tan.*[4] This court is not empowered to review the United States Supreme Court's decision on the issue of what action conflicts with the policies underlying the Immigration and Nationality Act. I can only state that the arguments advanced by the majority arguably might have some validity, if the United States Supreme Court had not already ruled to the contrary.

Although not mentioned by the majority, argument has been advanced by the appellees that *Sure–Tan* can be distinguished because in *Sure–Tan* the employees had voluntarily departed from the United States. The argument is that the *Sure–Tan* preclusion on reinstatement and back pay applies only when *reentry* of the illegal alien is required, and not to those situations where the alien has remained illegally in the United States in the interim period. While the facts in *Sure–Tan* did involve illegal aliens who had voluntarily left the United States, I do not find anything in *Sure–Tan* which indicates that the Court's rationale would support this limitation. In fact, the employees in *Sure–Tan* might well have already reentered the United States prior to the entry of the order of reinstatement, since the Court noted that at the time of the Board's decision "the record contained no evidence that the employees had not since returned to the United States." Based upon this record, I cannot believe that the Supreme Court intended to give undue significance to whether the proposed reinstatement order would be an inducement to illegally reenter as opposed to inducing continued illegal presence. In any event, Justice O'Connor, the author of the *Sure–Tan* decision, obviously did not have such a limitation in mind. In her subsequent decision in *Immigration and Naturalization Service v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), referring to *Sure–Tan,* she stated:

"But while he maintains the status of an illegal alien, the employee is plainly not entitled to the prospective relief—reinstatement and continued employment—that probably would be granted to other victims of similar unfair labor practices." 104 S.Ct. at 3489 n. 4 (1984).

In summary on this issue, I would hold that *Sure–Tan* precludes the unqualified order of reinstatement entered by the trial judge in this case. I do, however, seriously question whether Phoenix Vegetable is entitled to the reversal it seeks in this court. Two other issues have been raised which

---

**4.** I interpret the majority's use of the phrase "order of reinstatement" as a shorthand reference to an order of reinstatement not qualified by a requirement that at the time of reinstatement the employee be lawfully present and enti-tled to employment in the United States. In this appeal, Phoenix Vegetable has not argued that a properly qualified reinstatement order would not be an available remedy.

have not been decided by the majority. The first issue relates to the sufficiency of the evidence to support a finding that the appellee employees were aliens not legally entitled to work in the United States. As to only one employee is the record arguably sufficient. Since the majority does not reach this issue, I see no need to discuss it further. As to the remaining issue, whether a state court has jurisdiction to determine the *status* of an employee as an illegal alien in litigation of the nature involved in these proceedings, I am of the opinion that it clearly has.

For the foregoing reasons I dissent in part and concur in part with the majority opinion.